WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angelina Martinez,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-22-01644-PHX-DJH<br><br>**ORDER** |

Plaintiff Angelina Martinez ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner") denying her application for Social Security Disability Insurance ("SSDI") benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.* (the "Act"). (Doc. 1). Plaintiff filed her Opening Brief (Doc. 14), and the Commissioner filed a Response (Doc. 18). Plaintiff did not file a Reply and the time to do so has passed. *See* LRCiv 7.2(d) (a moving party has 7 days after service of the responsive memorandum to file a reply memorandum). Upon review of the briefs and the Administrative Record (Doc. 12, "AR"), the Court affirms the Administrative Law Judge's ("ALJ") April 27, 2022 decision (the "April decision") (AR at 8–23).

**I.　Background**

On November 18, 2003, Plaintiff was found disabled and awarded Social Security Income ("SSI") benefits. (*Id*. at 13). This favorable decision is known as the comparison point decision ("CPD"). Plaintiff was impaired with ADHD, moderate depressive disorder,

and generalized anxiety disorder, which prevented her from performing any work activity on a regular and continuing 40-hour workweek basis due to decreased attention and concentration, and diminished judgment and reliability. (*Id*. at 14). When she was 36 years old, Plaintiff was determined no longer disabled on February 1, 2019. (*Id*. at 124–127). Plaintiff appealed that decision (*id*. at 128) and filed an application for SSDI benefits under Title II of the Act on April 23, 2020, which was merged with her first appeal claim (*id*. at 269–275).

The ALJ held a hearing on Plaintiff's application and issued the unfavorable April Decision. (*Id*. at 8–23).

**II.    The ALJ's Eight-Step Process**

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The framework for determining whether a claimant continues to be disabled under the Act entails an eight-step evaluation process for Title II claims and a seven-step evaluation for Title XVI claims. *See* 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). This district has summarized the framework as follows:

> At step 1 of the Title II evaluation, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to step 2 (step 1 for the Title XVI evaluation). *Id.* § 404.1594(f)(2).
>
> At step 2, the ALJ determines if the claimant has an impairment or combination of impairment[s] which meets or equals the severity of an impairment listed in Appendix 1 to 20 C.F.R. § 404, subpart P. *Id.* If so, the claimant is still disabled. *Id.* If not, the ALJ proceeds to step 3. *Id.* § 404.1594(f)(3).
>
> At step 3, the ALJ determines if there has been medical improvement as shown by a decrease in medical severity. *Id.* If so, the ALJ proceeds to step 4. *Id.* If not, the ALJ skips to step 5. *Id.*

- 2 -

> At step 4, the ALJ determines if the medical improvement is related to the claimant's ability to do work, *i.e.*, if there has been an increase in the claimant's [residual functioning capacity][1]. *Id.* § 404.1594(f)(4). If so, the ALJ skips to step 6. *Id.* If not, the ALJ proceeds to step 5. *Id.*
>
> At step 5, the ALJ determines whether any exceptions in 20 C.F.R. §§ 404.1594(d), (e) apply. *Id.* § 404.1594(f)(5). If none apply, the claimant is still disabled. *Id.* If an exception in 20 C.F.R. § 404.1594(e) applies, the claimant is no longer disabled. *Id.* If an exception in 20 C.F.R. § 404.1594(d) applies, the ALJ proceeds to step 6. *Id.*
>
> At step 6, the ALJ determines whether all of the claimant's current impairments in combination are severe. *Id.* § 1594(f)(6). If not, the claimant is no longer disabled. *Id.* If so, the ALJ proceeds to step 7. *Id.*
>
> At step 7, the ALJ assesses the claimant's [residual functioning capacity] and determines whether the claimant can perform past work. *Id.* § 404.1594(f)(7). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to step 8. *Id.* § 404.1594(f)(8).
>
> At step 8, the ALJ determines whether the claimant can perform any other work give the claimant's [residual functioning capacity], age, education, and past work experience. *Id.* If so, the claimant is no longer disabled. *Id.* If not, the claimant is still disabled. *Id.*

*King v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587429, at *2 (D. Ariz. Sept. 18, 2020).

The ALJ's findings in the April Decision are as follows:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through the date of the April Decision. (AR. At 13–14). At step two, she found that Plaintiff has the following medically determinable impairments: ADHD; moderate depressive disorder; generalized anxiety disorder; and non-epileptic, psychogenic seizures. (*Id*. at 14). The ALJ ultimately determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id*. at 14–16). In so finding, the ALJ applied the 20 C.F.R. § 404.1520a(b) psychiatric review technique ("PRT") to evaluate

---

[1] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

Plaintiff's mental impairments. The ALJ concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace, and a mild limitations in adapting or managing oneself. (*Id*. at 15).

At step three, the ALJ noted that medical improvement occurred on February 1, 2019. (*Id*. at 16). The ALJ found there was a decrease in the severity of Plaintiff's depression and anxiety such that it "no longer result[ed] in [Plaintiff's] inability to sustain regular and continuing work activity due to marked limitations in [her] ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as was determined at the time of the CPD (1F/7-8)." (*Id*.) The ALJ also found Plaintiff's abilities in attention, concentration, judgment, and reliability had improved. (*Id*.) At step four, the ALJ found that these improvements related to Plaintiff's ability to do work because the residual functioning capacity ("RFC") that Plaintiff had on February 1, 2019, was less restrictive than the RFC that Plaintiff had at the time of the CPD. (*Id*. at 16–19). The ALJ accordingly skipped to step six, where she determined that Plaintiff continued to have a combination of impairments that caused more than minimal limitation in the Plaintiff's ability to perform basic work activities. (*Id*. at 18).

At step seven, the ALJ assessed Plaintiff's RFC based on her current impairments as of February 1, 2019, as follows:

> Plaintiff has had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must work in an environment where she never climbs ladders, ropes, or scaffolds; should not work in commercial kitchens; must work in an environment with no exposure to hazards like moving dangerous machinery, unprotected heights, or commercial driving; due to her mental health, medication side effects and other symptoms and limitations, she maintains the ability to understand, remember and apply information regarding simple, routine tasks in an environment with no contact with the public and no fast paced work that requires consistent deadlines or moving quickly on a consistent basis throughout the day.

(*Id*. at 18). In determining Plaintiff's RFC, the ALJ stated she "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929." (*Id*.) The ALJ also considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927, and in conjunction with Social Security Ruling ("SSR") 17-2p. (*Id*.) The ALJ further explained that transferability of job skills was not an issue because Plaintiff has no past relevant work. (*Id*. at 23).

At step eight, the ALJ accepted testimony from a vocational expert that Plaintiff can perform a significant number of jobs in the national economy based on her current RFC and impairments—namely, as a photocopy machine officer, retail marker, and housekeeping cleaner. (*Id*. at 22). The ALJ therefore concluded that Plaintiff's disability ended on February 1, 2019, and Plaintiff has not become disabled again since that date. (*Id*. at 23). In other words, Plaintiff was deemed no longer disabled under the Act. (*Id*.)

The SSA Appeals Council denied Plaintiff's request for review of the ALJ's April Decision, thus adopting the decision as the agency's final decision. (*Id.* at 1–5). This appeal followed. On September 27, 2022, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g), 1383(c)(3) requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

**III.   Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d

at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate nondisability determination. *Id*. Typically, the claimant bears the burden of showing that an error is harmful. *Id*. at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.   Discussion**

Plaintiff contends the ALJ erred in two ways: (1) the ALJ's decision is not based on substantial evidence because she failed to consider updated medical records regarding Plaintiff's seizures and lower back impairment; and (2) the ALJ's RFC failed to account

for Plaintiff's stress-based limitations in the RFC. The Court will address each of Plaintiff's arguments in turn.

### A. Medical Opinions

First, Plaintiff argues the ALJ erred because she failed to consider additional medical records that show Plaintiff suffers from epileptic—not psychogenic—seizures and lower back impairments due to foraminal stenosis and disc protrusions. (Doc. 14 at 8–9).

#### 1. Seizures

The ALJ found at step two that Plaintiff was impaired with psychogenic, non-epileptic seizures. (AR at 14). That finding was based, in part, on the medical opinions of James Haynes, M.D ("Dr. Haynes"), which the ALJ summarized in the April Decision as follows:

> Dr. Haynes testified the claimant's seizure spells may be non-convulsive or psychogenic. He said the record shows they usually occur at busy times such as the holidays. He noted a video sleep study showed a non-epileptic seizure "spell," and he noted the claimant's neurologist opined in January 2020 that these were psychogenic non-epileptic (7F). He noted that a 24-hour monitoring study showed no spells. Dr. Haynes further stated that more detailed monitoring performed in April 2021 showed the presence of psychogenic seizures, but that when the claimant takes Clonazepam, she does not have any spells (12F). He noted claimant is compliant with treatment but she appears "spaced out" during telehealth visits, and the claimant's family has related that she is "stressed out." He said the claimant's seizure disorder does not meet or equal section 11.02B or 11.02D. Dr. Haynes opined claimant has seizure precautions, including hazards restrictions, no working in a commercial kitchen setting, and no commercial driving. Dr. Haynes' opinion is given great weight based on its consistency with the greater medical evidence and because he reviewed the medical evidence available to him at the time of the hearing and he provided a thorough explanation of his findings. He understands the disability program and related requirements. His opinion is also supported by his medical specialty and familiarity with the claimant's neurological disorders.

(*Id.* at 21). Dr. Haynes also reiterated at Plaintiff's hearing that "psychogenic seizure disorder is mostly likely the correct diagnosis." (*Id.* at 14, 78–81).

The hearing transcript further shows that Plaintiff provided the ALJ with

- 7 -

supplemental medical records the day before the hearing (*Id*. at 102–103), which characterized her seizures as "consistent with a diagnosis of localization-related epilepsy arising from the right frontotemporal region epileptic in nature." (*Id*. at 801–814 (Plaintiff's February 26, 2021 "Epilepsy Monitoring Unit Discharge Summary" by the Banner Neurological Institute)). Plaintiff alerted the ALJ to her late disclosures at the close of the hearing, to which the ALJ replied that Plaintiff bears the responsibility to "file everything on time." (*Id*. at 102–103). The ALJ nonetheless acknowledged receipt of the records and said she would proceed to make her decision. (*Id*. at 103).

Plaintiff contends the ALJ erred when concluding her seizures are psychogenic in nature notwithstanding the supplemental records because neither the ALJ nor Dr. Haynes considered the supplemental records. (Doc. 14 at 5–7 (citing AR at 801–814)). Plaintiff maintains that "[d]espite acknowledging the potential need for additional expert testimony, the ALJ elected to not conduct another hearing or solicit additional opinion evidence in error." (*Id*. at 5). She further argues the evidence shows her epileptic seizures would last five to ten minutes and compromise her to work thereafter due to resulting fatigue. (*Id*. at 8). Plaintiff reasons that because the RFC was based on the presumption that her seizures were psychogenic, not epileptic, in nature, the RFC was not based on substantial evidence. (*Id*. at 9).

The Commissioner argues it is inconsequential that the supplemental records predate Dr. Haynes' opinion because the ALJ was capable of independently reviewing such records. (Doc. 18 at 12 (citing *Owen v. Saul*, 808 F. Appx. 421, 423 (9th Cir. 2020); *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)). The Commissioner further contends the supplemental records do not contradict the ALJ's overall finding that Plaintiff's seizures are of psychogenic origin. (*Id*.) Last, the Commissioner maintains that Plaintiff has not otherwise explained how a change in seizure type would be material to the RFC analysis. (*Id*. at 11). The Court agrees with the Commissioner in all respects.

First, Plaintiff's contention that Dr. Haynes did not have access to the supplemental records when he testified at the hearing is inconsequential. Inherent in an ALJ's authority

to weigh expert testimony is the capability to independently review and form conclusions about medical evidence in making disability determinations. *See Farlow*, 53 F.4th at 488. And although Plaintiff posits the ALJ did not consider the supplemental records at all, the hearing transcript suggests otherwise. In any event, the ALJ did not solely rely on Dr. Haynes' opinion with respect to seizures when assessing Plaintiff's RFC, nor could she. *See* 20 C.F.R. § 404.1520(a)(3) (directing that an ALJ must "consider all evidence in [a claimant's] case record" when making a disability determination).

Second, the fact that the supplemental records reflected a diagnosis of epileptic seizures does not necessarily mean the ALJ's finding of psychogenic seizures is unsupported by substantial evidence. The ALJ expressly noted in the April Decision that "[e]pilepsy is indicated elsewhere in the record" when ultimately concluding Plaintiff's seizures were most likely psychogenic in nature. (AR at 15). The record indeed reflects competing diagnoses (*compare* AR 606, 682, 803 (finding epileptic origin) *with* AR 572, 598, 621 (finding psychogenic origin)), and the ALJ properly resolved such ambiguities. *See Andrews*, 53 F.3d at 1039. Moreover, these ambiguities are not for the reviewing court to weigh. *See Thomas*, 278 F.3d at 954 (stating that the Court cannot reweigh the evidence nor substitute its judgment for that of the Commissioner).

Last, even if epileptic seizures were the proper diagnosis, the Court finds such error is harmless because Plaintiff has not identified any resulting functional limitations that the ALJ failed to consider. *See Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) (finding the claimant "[did] not set forth, and there [was] no evidence in the record, of any functional limitations . . . that the ALJ failed to consider"). Plaintiff states her epileptic seizures would last five to ten minutes and compromise her ability to work thereafter due to resulting fatigue. (Doc. 14 at 8). But Plaintiff does not articulate how these circumstances pose limitations that differ from psychogenic seizures. The ALJ considered medical evidence that recounted Plaintiff's seizure episodes in a similar manner. (*See e.g.*, AR 34 (explaining that Plaintiff felt "confused, fatigued, and amnestic after her [seizure] events"). To account for Plaintiff's seizures disorder, the ALJ included in the RFC the "seizure

precautions" posed by Dr. Haynes, including "hazards restrictions, no working in a commercial kitchen setting, and no commercial driving." (*Id*. 21, 18). Therefore, it is unclear how a change in seizure type would be material to the limitations in Plaintiff's RFC. And the Court cannot conclude the "the ALJ failed to account for [a claimant's] injuries in some unspecified way." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting the claimant's argument that the RFC omitted specific injuries because the plaintiff "d[id] not detail what other physical limitations follow from the evidence of [those] injuries, besides the limitations already listed in the RFC").

### 2. Lower Back Impairments

Plaintiff next argues the ALJ failed to account for a December 15, 2021, MRI that demonstrated Plaintiff suffered back impairments due to foraminal stenosis and disc protrusions. (Doc. 14 at 9). Plaintiff argues this evidence "confirm[ed] the great likelihood that [she] is limited in physical functioning," but the ALJ disregarded the evidence and "set forth no corresponding physical limitations of any kind." (*Id*.) The Commissioner contends this evidence is irrelevant to the ALJ's April Decision because Plaintiff's disability claims were not based on allegation of physical symptoms related to her lower back. (Doc. 18 at 15). The Court agrees with the Commissioner.

Plaintiff listed ADD and learning disability as the bases for her disability claim. (AR at 320, 335). She did not mention any lower-back impairment at her hearing (*id*. at 89–98), in her Continuing Disability Review Reports (*id*. 319–338), in her Disability Reports (*id*. 350–358), or in her Function Reports (*id*. 359–375). Because Plaintiff did not allege her lower back condition was a disabling impairment in her applications or argue the issue before the ALJ, "the ALJ's failure to consider Plaintiff's alleged [lower back condition] as an impairment does not constitute error." *Curtis R. v. Kijakazi*, 2023 WL 7301988, at *5 (C.D. Cal. Nov. 3, 2023) (citing *Bowser v. Comm'r of Soc. Sec.*, 121 F. App'x 231, 236–37 (9th Cir. 2005) ("The ALJ did not err in failing to account for the effects of a medical impairment—obesity—that [the c]laimant never raised before the ALJ and is not readily apparent from the record" because [t]o hold otherwise under these

circumstances would be tantamount to eviscerating [the c]laimant's burden of showing the presence of a medically determinable impairment.")).

In sum, the ALJ's finding that Plaintiff suffers from psychogenic seizures is supported by substantial evidence, and the ALJ did not err when she did not consider evidence of Plaintiff's lower back impairments.

### B. Limitations in the RFC

Second, Plaintiff argues the ALJ failed to include stress-based limitations in the RFC to account for her psychogenic seizures. (Doc. 14 at 10–21). The SSA regulations define a claimant's RFC as the "*maximum degree* to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)) (emphasis added); *see also* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p (The RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most"). The ALJ assessed Plaintiff's current RFC as follows:

> Plaintiff has had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must work in an environment where she never climbs ladders, ropes, or scaffolds; should not work in commercial kitchens; must work in an environment with no exposure to hazards like moving dangerous machinery, unprotected heights, or commercial driving; due to her mental health, medication side effects and other symptoms and limitations, she maintains the ability to understand, remember and apply information regarding simple, routine tasks in an environment with no contact with the public and no fast paced work that requires consistent deadlines or moving quickly on a consistent basis throughout the day.

(AR at 18).

Plaintiff argues the RFC is inadequate because it does not include any corresponding physical or mental limitations that account for the fact that her psychogenic seizures are caused and exacerbated by stress. Plaintiff cites to SSR 85-15[2] for the proposition that

---
[2] Social Security Ruling 85-15 provides that "[a]ny impairment-related limitations created

- 11 -

limitations involving stress need to be defined in the RFC. (Doc. 14 at 18–22). Although Plaintiff concedes the physical limitations reflect the precautionary restrictions advised by Dr. Haynes and are generally consistent with her seizure disorder, she argues they are insufficient because they do not mitigate the frequency of her seizures. (*Id*. at 14). Plaintiff further contends the RFC's mental limitations are insufficient because they were entirely based on opinions by David Glassmire, Ph.D., who never discussed Plaintiff's seizures.[3] (*Id*. at 16 (citing AR at 85–89)). In Plaintiff's view, the ALJ should have expressly limited her to "low stress jobs" in the RFC, and errored under SSR 85-15 by failing to do so. (*Id.* at 14). The Commissioner disagrees, arguing the RFC adequality mitigates the amount of stress Plaintiff would be exposed to so that her seizures would not be triggered in the first place.

While Plaintiff complains the RFC does not have a stress-based limitation on its face, the Court finds the ALJ properly considered and accounted for Plaintiff's seizure disorder by limiting her to environments that minimized stress. Although Plaintiff notes that Dr. Glassmire did not discuss Plaintiff's seizure when opining on her mental limitations (*see* AR 20, 86–88), the April Decision shows the ALJ indeed considered the correlation between stressful environments and Plaintiff's seizure disorder. (AR at 17 ("[Plaintiff] said she thinks her seizures are stress-related"), 19 ("[Plaintiff] thinks stress triggers the seizures and is therefore hesitant to change her medications.")). The ALJ also noted in her PRT findings the impact that stress has on Plaintiff's ability to concentrate, persist, or maintain pace. (AR at 15 ("[Plaintiff] complained that she has difficulty learning and retaining new information, and that these symptoms are aggravated by stress.")).

As noted by the Commissioner, "[c]ourts within the Ninth Circuit have [] concluded that a claimant's low tolerance of stress is encompassed in a limitation 'to simple, repetitive

---

by an individual's response to demands of work [] must be reflected in the RFC assessment." SSR 85-15.
[3] Dr. Glassmire discussed Plaintiff's history of depression, anxiety, and domestic violence in concluding her "mental impairments result[ed] in mild limitations in understanding, remembering and applying information, moderate social limitations and moderate limitations in concentration, persistence and pace, and mild limitations adapting to change." (AR at 20).

- 12 -

tasks' and work 'that does not require meeting fast-paced quotas.'" *Coats v. Colvin*, 2015 WL 5813333, at *22 (E.D. Cal. Sept. 30, 2015) (collecting cases); *see also Spencer v. Kijakazi*, 2022 WL 4482567, at *6 (E.D. Cal. Sept. 27, 2022), *report and recommendation adopted*, 2023 WL 184974 (E.D. Cal. Jan. 13, 2023) (collecting cases). Thus, the ALJ included stress based-limitations in the RFC restricting Plaintiff to simple, routine tasks in environments that had no contact with the public, no fast paced work that requires consistent deadlines, and no fast paced work that requires moving quickly on a consistent basis throughout the day. (AR at 18); *Coats*, 2015 WL 5813333, at *22. The ALJ also included "seizure precautions" in the RFC to account for various physical limitations. (*Id*. at 21). Contrary to Plaintiff's position, the Court finds that these limitations, taken together, show the ALJ adequately accounted for stress-based limitations that reflect the most Plaintiff can do despite her impairments. *See Reddick*, 157 F.3d at 724 (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c); 20 C.F.R. § 404.1545(a); SSR 96-8p. The ALJ did not err.

**V.     Conclusion**

To summarize, the ALJ's finding that Plaintiff suffers from psychogenic, non-epileptic seizures is supported by substantial evidence. The ALJ's failure to consider Plaintiff's alleged lower back condition does not constitute error because Plaintiff did not allege her lower back condition was a disabling impairment in her applications or argue the issue before the ALJ. Furthermore, the ALJ properly considered and accounted for Plaintiff's stress-induced seizures by including stress-based limitations in the RFC.

Accordingly,

**IT IS ORDERED** that the Administrative Law Judge's April 27, 2022 decision is **affirmed**.

///

///

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 27th day of March, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge